IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DANIELLE H.[1]**,

    Plaintiff,

v.

**KILOLO KIJAKAZI,** Acting
Commissioner of Social Security,

    Defendant.

Case No. 3:22-cv-1382-SI

**OPINION AND ORDER**

Betsy R. Shepherd, 425 Riverwalk Manor Dr., Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Michael J. Mullen, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

    Plaintiff Danielle H. (Plaintiff) seeks judicial review of the final decision of the

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's

application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB)

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

pursuant to the Social Security Act (the Act). For the reasons explained below, the decision of the Commissioner is affirmed.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

**A. Plaintiff's Application**

Plaintiff applied for DIB and SSI on September 11, 2018, initially alleging an onset date of October 13, 2017. AR 344, 351. Plaintiff was born in 1988 and was 28 years old on her initial alleged onset date. AR 95. Prior to her alleged disability, Plaintiff engaged in seasonal construction work, but had no periods of substantial gainful activity. AR 69. She alleges that during the relevant period she was unable to work due to losing sight in both eyes and post-traumatic stress disorder (PTSD). AR 401. Because she was able to return to full-time work on January 13, 2020, at her initial hearing she amended her request for benefits for a closed period from October 13, 2017 through January 13, 2020. AR 68.

The agency denied Plaintiff's claims both initially, AR 108, and upon reconsideration, AR 139. On June 12, 2019, Plaintiff requested a hearing before an ALJ. AR 221. Plaintiff and her attorney appeared by telephone for a hearing before ALJ Campbell on April 22, 2020. AR 63-93. On May 5, 2020, the ALJ issued a decision partially granting Plaintiff's disability claim, finding that she was disabled from April 1, 2018 through January 12, 2020, due to her vision loss and associated PTSD and anxiety. AR 167-77. The ALJ then amended the decision, changing only the dates of Plaintiff's closed period of disability and finding Plaintiff disabled from April 17, 2018 through January 13, 2020. AR 187.

On April 7, 2021, the Appeals Council remanded the decision to the ALJ, with instructions to (1) determine if Plaintiff met the requirements for statutory blindness because otherwise she is not insured for DIB coverage during the closed period of disability found by the ALJ, who had incorrectly determined her date last insured, (2) reevaluate Plaintiff's limitations from both her vision and mental health impairments during the relevant period because the ALJ's determination of Plaintiff's Residual Functional Capacity (RFC) was not supported by

PAGE 3 – OPINION AND ORDER

substantial evidence, (3) obtain additional evidence, including medical records, potentially medical expert testimony, and testimony from a vocational expert (VE), (4) reconsider whether Plaintiff has past relevant work, and (5) explain whether she experienced medical improvement or some other basis for the end of her disability, if she is again found to be disabled, and consider the application of a trial work period if appropriate. AR 190-95.

In compliance with the Appeals Council's instructions, the ALJ held a second hearing on July 28, 2021. AR 43-62. At that hearing, the ALJ described Plaintiff as having amended her alleged onset date to April 17, 2018 in the original hearing. AR 46. Plaintiff, however, had amended her alleged onset date to October 13, 2017 in the original hearing. In the ALJ's opinion, however, he adjudicated Plaintiff's claim from the amended onset date of October 13, 2017, through the alleged closed period ending January 13, 2020. Medical expert Dr. Willie Benson Boone testified regarding Plaintiff's visual impairments. AR 48-56. VE K. Diane Kramer also testified. AR 59-61. On November 3, 2021, the ALJ issued a new decision, this time finding that Plaintiff was not disabled during the relevant period and denying her benefits. AR 14-41. The Appeals Council denied Plaintiff's request for review. AR 1. Accordingly, the ALJ's decision became the final agency decision from which Plaintiff now seeks review.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.   The ALJ's Decision**

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Act only from January 1, 2018 through March 31, 2018, as instructed by the Appeals Council. AR 21. At step one of the analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 22. At step two, the ALJ found the following severe, medically determinable impairments: "anxiety and short term loss of vision in one eye due to an unclear cause." AR 23. At step three, the ALJ determined

that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

The ALJ then found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following limitations:

> [N]o two eyed vision or depth perception and no exposure to unprotected heights or moving machinery, but could read small print occasionally, drive, discern color size and shape, avoid common hazards, do simple routine work, and have occasional coworker contact but no public contact.

AR 27-28. At step four, the ALJ found that Plaintiff did not have any past relevant work. AR 34. At step five, the ALJ found Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy, specifically as a laundry worker, dishwasher, and collator operator. AR 35. The ALJ then found that Plaintiff was not disabled under the Act from the amended alleged onset date of October 13, 2017 through January 13, 2020. AR 36.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) failing to reconcile the medical opinions of Dr. C. "Bruce" Stebel, OD and Dr. W. Benton Boone, MD; (3) improperly rejecting lay witness testimony; and (4) failing to include all of Plaintiff's limitations in the hypothetical given to the VE. The Court discusses each in turn.

### A.  Plaintiff's Subjective Symptom Testimony

####     1.  Standard

Plaintiff argues that the ALJ improperly discounted her symptom testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ

must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**2. Analysis**

The ALJ discounted Plaintiff's testimony regarding the severity and length of her visual impairment because she responded well to treatment. AR 29. On April 17, 2018, Plaintiff saw a doctor complaining of severe pain, light sensitivity, and blurry vision in her right eye, likely due to exposure to raw sewage. AR 509. Plaintiff also had severe lesions on her face, which her medical providers believed was herpes keratitis. AR 603-606. In June 2018, her right eye improved, but then her left eye became affected, and Plaintiff was in severe pain. AR 603. In September 2018, her doctor placed an amniotic membrane over both eyes to assist with healing.

AR 746. Then in November 2018, Plaintiff received specialized scleral lenses, AR 791, which Plaintiff testified was "a victory day" and was "a big source of help." AR 77. By January 2019, Plaintiff's vision had significantly improved, and Plaintiff reported her to her therapist that her "vision is restored." AR 800, 837.

An ALJ may consider the amount and type of treatment in evaluating the intensity and persistence of a claimant's symptoms and limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Evidence that treatments relieve symptoms can undermine a claim of disability. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Plaintiff's positive response to treatment is a clear and convincing reason to discount Plaintiff's testimony and is supported by substantial evidence in the record. Although it took her medical providers a few months to figure out an effective treatment—in part, due to Plaintiff's failure to comply with treatment and attend doctor's appointments—once Plaintiff complied with treatment, she began seeing immediate results. *See* AR 533 (doctor noting on September 10, 2018, that Plaintiff was admitted to hospital "due to poor compliance with drops at home and relapse use of methamphetamine" and that she "[m]isses most appointments and would not likely return for . . . appropriate monitoring"); 766 (doctor noting on November 11, 2018, after placement of amniotic membrane, that Plaintiff "notices improvement" in vision); 800 (Plaintiff's statement to therapist on January 1, 2019, that her "vision is restored"). Plaintiff's positive response to treatment is a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's testimony.

**B. Medical Opinions**

Plaintiff argues that the ALJ failed to reconcile the medical opinions of Dr. Stebel, one of Plaintiff's treating doctors, and Dr. Boone, the medical expert that testified at her second hearing. Plaintiff contends that the ALJ gave weight to both doctors, but yet their opinions were conflicting and thus the ALJ's opinion was internally inconsistent and in conflict.

Dr. Stebel wrote two letters on Plaintiff's behalf. AR 762, 884. In his October 10, 2018 letter, Dr. Stebel explained that Plaintiff "has been battling painful corneal ulcers in both eyes, which have required specialty corneal treatment at OHSU to heal." AR 762. He explained that until Plaintiff was fit with scleral contact lenses, "she is visually far, far away from legal to drive or safe to work" but that her "prognosis is wonderful." *Id.* In his second letter written in 2020, Dr. Stebel explained that when he saw Plaintiff on September 26, 2018, "her vision would not allow her to walk down the hallway unassisted." AR 884. He explained that on her visit with him on January 21, 2019, "her journey to visual recovery was not at its end," and that "[b]ecause of the severe nature of her vision loss" she "would have a long and slow road of ocular healing and visual flux as her eyes recovered." AR 885.

Dr. Boone testified as a medical expert at Plaintiff's second hearing. AR 48. He testified that between "April 17, 2018, through November 5, 2018, the claimant could not have visually qualified to carry out tasks requiring good vision in two eyes or tasks requiring good depth perception, such as an airline pilot, commercial bus driver, or butcher," but that during that time period she "could visually qualify to drive, to read small print, to discern the color, size, and shape" of small objects, and "to avoid common hazards in the workplace with no environmental limitations." AR 52. Dr. Boone testified that after November 23, 2018, when Plaintiff received the sclera lenses, he could "ascribe no visual limitations to the claimant." AR 53.

In his opinion, the ALJ found both Dr. Stebel's and Dr. Boone's opinions persuasive. AR 29-32. Plaintiff argues that the two opinions "are at odds" because Dr. Stebel found Plaintiff had greater limitations during the relevant period than did Dr. Boone.

The Court disagrees with Plaintiff's interpretation of the ALJ's opinion and finds that the ALJ did note the differences between the two doctor's opinions. Specifically, regarding

Dr. Stebel, the ALJ recognized that in Dr. Stebel's 2020 letter "that the claimant's visual impairment was such in September of 2018 that she was unable to walk down a hallway unassisted, but that by January 2019, with the use of rigid contact lenses, the claimant's vision had returned to approximately 20/30." AR 29. Then, in addressing Dr. Boone's opinion the ALJ wrote, "While Dr. Boone's assertion that the claimant was responsive to treatment and experienced marked improvement in her visual functioning during the period in question is also well supported by the abovementioned records, particularly by the letters and treatment notes of Dr. Stebel, the undersigned retained the residual functional capacity based on his limitations for the duration of the requested closed period." AR 32. That is, both doctors opined that Plaintiff's vision was affected for a period of time but improved with treatment, and the ALJ determined to incorporate Dr. Boone's specific limitations into the RFC even though Plaintiff's impairments were not constant through the relevant period. Such an interpretation of the two medical opinions is rational, supported by substantial evidence, and will not be disturbed by the Court. *See Vasquez*, 572 F.3d at 591 ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." (cleaned up)).

## C. Lay Witness Evidence

### 1. Standard

Plaintiff argues the ALJ erred in discounting the Third-Party Function Report submitted by her father. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ

gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2. Analysis

The ALJ considered the Third-Party Function Report that Plaintiff's father completed and noted that her father described a "somewhat higher level of function" than what the claimant

described. AR 28. Her father explained that Plaintiff was able to care for her three children, including "getting them up and ready for school, sometimes preparing lunches or simple meals, bathing them, doing their laundry, and taking them to activities or church," that she was dusting, mopping, washing dishes, making the beds, going outside and on walks every day, and attending bible study. AR 28-29. The ALJ found Plaintiff's father's statements unpersuasive because her father's descriptions were not supported by the objective medical record. AR 34. The ALJ also reasoned that "even if one accepts these allegations as completely true, they do not describe symptoms or limitations so severe as to preclude the claimant from working at jobs consistent with the residual functional capacity." *Id.*

As the ALJ concluded, Plaintiff's father's testimony conflicted with the objective medical evidence, specifically her positive response to treatment. "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Billy Lee M. v. Saul*, 2020 WL 4584240, at *4 (W.D. Wash. Aug. 10, 2020), *aff'd sub nom. McGuire v. Kijakazi*, 2021 WL 5861284 (9th Cir. Dec. 10, 2021) ("However, improvement with treatment was a germane reason to discount the lay witness statements."). And because this reason was the same clear and convincing reason that the ALJ discounted Plaintiff's testimony, it is also germane for discounting the lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). Accordingly, the ALJ did not err.

**D. Hypothetical to Vocational Expert**

Finally, Plaintiff argues that the ALJ's hypothetical to the VE was invalid because it did not include all the limitations as testified by Plaintiff, her father, and Dr. Stebel. Because the Court has determined the ALJ did not err in evaluating the evidence before him, such argument is without merit.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

DATED this 19th day of October, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge